McLEAN, Respondent, vs. McLEAN and others, Appellants.

*May 7—October 14, 1924.*

*Curtesy: Note and mortgage on wife's land signed by husband and wife: Remedies of mortgagor: Privity as between tenant by the curtesy and remaindermen: Limitation of actions: How tolled: Payment on account by one joint contractor.*

1. A husband joining with his wife in the execution of a note and mortgage on her separate property became obligated to pay both principal and interest on the note, and, on taking possession of the mortgaged premises and enjoying the income,

rents, and profits thereof as tenant by the curtesy, was also obligated to pay interest on the mortgage, which constituted a lien on his life estate as well as on the fee of the heirs at law of the wife.  p. 499.

2. On the death of the wife the owner of the mortgage could (1) file a claim for the full amount of the note with interest against the estate, (2) file a contingent claim for a possible deficiency on foreclosure, and then proceed with the foreclosure suit, or (3) rely solely on the security and foreclosure of the mortgage.  p. 500.

3. A life tenant and the heirs at law are not tenants in common, nor is there any privity of contract or estate between them. p. 500.

4. The wife's heirs at law not joining in the execution of the note or mortgage, nor assuming an obligation to pay the note, are not joint contractors with the husband within the meaning of sec. 4248, Stats., and the payment by the husband as such tenant by the curtesy of interest on the mortgage, without the knowledge or acquiescence of the heirs, does not stop the running of the statute of limitations in their favor. Neither the life tenant nor the remaindermen are obligated to pay the principal of the mortgage, though entitled to do so and enforce contribution against the life tenant for interest on the mortgage in case of payment by the remaindermen, or against the latter for the amount paid by the life tenant less such interest.  p. 501.

5. By paying part of the interest on the mortgage, the tenant by the curtesy tolled the statute as to his obligation on the note and mortgage, thereby rendering him personally liable on the note and subjecting his life interest to foreclosure and sale within the statutory period thereafter until his death, after which the holder of the note and mortgage could only file a claim against his estate.  p. 502.

6. Under sec. 4248, Stats., a wife would not lose the benefit of either the twenty or the six-year statute because of the payment of interest on a mortgage by her husband without her authority, acquiescence, or consent, though he became a joint contractor with her.  p. 504.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge.  *Reversed.*

For the appellants there was a brief by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *L. A. Avery* and *O. A. Oestreich.*

For the respondent there was a brief by *Whitehead &*
*Matheson* of Janesville, attorneys, and *Robert C. Bulkley*
of Elkhorn, of counsel, and oral argument by *John M.*
*Whitehead.*

The following opinion was filed June 23, 1924:

DOERFLER, J. The court found, among other things,
that on the 5th day of November, 1879, one Mary E. Mc-
Lean and John McLean, her husband, executed and de-
livered to one Cook a promissory note for the sum of $800,
payable in three years after date, with interest thereon at
the rate of eight per cent. per annum, payable annually;
that to secure said note the makers executed a mortgage
upon certain real estate belonging to Mary E. McLean,
which mortgage was duly recorded; that the interest on
said note was regularly paid until November 16, 1891; that
the parties then agreed to reduce the interest to seven per
cent., and that the interest thereafter was regularly paid
until November 5, 1903; that thereafter one year's interest
was paid on November 5, 1909, and that the only interest
paid thereafter was on March 1, 1918, the amount being
$10; that all of the payments of interest aforesaid were
duly indorsed on the note; that Mary E. McLean died intes-
tate on May 6, 1902, leaving as her only heirs at law *Addie*
*E. Flansburg, Eva L. Bortle,* Louisa L. Rice, *Ervin C.*
*McLean,* and her husband, John McLean; that Louisa L.
Rice died before the commencement of this action, leaving
as her heirs at law her children, *Florentine Rice* and *Claude*
*Rice;* that the plaintiff and John McLean were married on
October 10, 1902; that one Mary E. Fielding, who became
the owner of the note and mortgage in question upon the
death of the mortgagee, Cook, on the 23d day of November,
1903, assigned and transferred the same to the plaintiff;
that upon the death of the said Mary E. McLean, John
McLean became possessed of said real estate as tenant by

the curtesy, and continued in such possession until September 8, 1922, when he died; that the total amount of the principal and interest due and unpaid is the sum of $1,841.24; that the payments of interest made as above stated take said cause of action out of the operation of the statutes of limitation; and that no part of said real estate consists of a homestead. As conclusions of law the court found that the plaintiff is entitled to judgment of foreclosure. A judgment of foreclosure was thereupon entered, from which judgment appellants have taken this appeal.

The appellants, in the court below, pleaded the statutes of limitation, and the only question involved on this appeal is whether or not the note and mortgage are barred by such statutes. Under the provisions of sec. 4220, Stats., an action upon a sealed instrument, where the cause of action accrues within this state, with certain exceptions not applicable here, must be commenced within twenty years. Under the provisions of sec. 4222 an action on a note must be commenced within a period of six years after the cause of action has accrued. Sec. 4248 provides as follows:

"If there are two or more joint contractors or joint executors or administrators of any contractor no one of them shall lose the benefit of the provisions of this chapter, so as to be chargeable, by reason only of any payment made by any other or others of them."

The note in question, while executed for the benefit of the separate estate of Mary E. McLean, the owner of the mortgaged property, was a joint note as to the payee or any subsequent owners. John McLean also joined in the mortgage, which would subject any future interest which he might obtain in the real estate during the life of the mortgage to the lien thereof. Mary E. McLean, having died on May 6, 1902, paid the last interest upon the note in November, 1901. The action to foreclose was begun on February 5, 1923. From the time of the death of Mary

E. McLean up to the time of the commencement of the action, whatever interest was paid upon the note was paid by John McLean, and there is nothing in the record to show that any of the payments made during this time were made with the knowledge, consent, or acquiescence of the appellants herein. John McLean, from the time of his wife's death in 1902 up to September 8, 1922, had possession of the mortgaged real estate as tenant by the curtesy. As a joint maker of the note in question John McLean became obligated to pay both the principal and the interest on the note. As tenant by the curtesy after the death of his wife, he having possession of the premises and enjoying the income, rents, and profits thereof was also obliged to pay the interest on the mortgage. After 1903 the first payment of interest was in 1909. Thereafter a period of nine years elapsed before any other payment was made on interest, and on such occasion a small payment of $10 was made, evidently for the express purpose of keeping the mortgage alive.

While the note became due in 1883 and while the interest thereon was regularly paid during the lifetime of Mary E. McLean, the plaintiff could have at any time foreclosed the note and mortgage for default in the payment of the principal. No agreement for extending the time of payment of the note and mortgage had ever been entered into, so that at the time of the death of Mary E. McLean her heirs at law became the owners in fee of her property, subject to her husband's right by the curtesy and subject to the payment of the mortgage, in which default had been made in the payment of the principal and which was subject to immediate foreclosure. The mortgage constituted a lien not only upon the interests of the heirs at law, the owners of the fee, but also upon the life estate of the husband. Under such circumstances John McLean, as life tenant, took possession of the property, and at such time was liable as

a joint maker of the note for the payment of the principal and interest, but was also under an obligation to pay the interest upon the mortgage as life tenant.

Up to the time of the death of Mary E. McLean, as a joint maker of the note she was liable for the principal and the interest, and her property remained as security by virtue of the mortgage. Upon her death the owner of the mortgage had the right to pursue one of three remedies as against her: first, she could file her claim for the full amount of the note, with interest, against the estate of the deceased, and thereby recover the full amount of the personal obligation; second, she could file a contingent claim for a possible deficiency on the foreclosure, and then proceed with a foreclosure suit in the circuit court for the foreclosure of the mortgage; or third, she could rely solely upon her security and the foreclosure of her mortgage. It does not appear from the record that she either filed a personal claim on the note or a contingent claim; therefore the only remedy that was left for her was to commence a foreclosure action, under and pursuant to which the mortgaged property of the deceased would be subjected to payment of the judgment.

Upon the death of Mary E. McLean two estates were created, viz.: first, the life estate of the surviving husband; and second, the remainder in fee in the heirs at law. The life tenant and the heirs at law are not tenants in common (21 Corp. Jur. 941, 942), nor is there any privity of contract or of estate between them. In *Gindrat v. Western Ry. of Alabama,* 96 Ala. 162, 11 South. 372, it is said:

"There is no privity between the tenant for life and the remainderman. He does not and did not represent them in any wise or to any extent. No affirmative act of his could cut off their rights or divest their estates." See, also, 21 Corp. Jur. 941.

While Mary E. McLean and her husband were joint makers of the note and were therefore joint contractors in

the sense that the term is used under the provisions of sec. 4248, after the death of the deceased there remained but one joint contractor, and the heirs at law can in no sense be deemed to be joint contractors with the husband, for they neither joined in the creation of the debt or the giving of security, nor did they assume an obligation to pay the note. The sole liability of the heirs at law is confined to the subjection of their interests in the property to the payment of the debt on the foreclosure of the mortgage.

Sec. 4248 evidently was enacted for the purpose of modifying the doctrine which then prevailed, and which constituted the weight of authority of the courts, that a payment by one joint contractor amounted to a payment by all, and thus suspended the operation of the statutes of limitation as to all. But the provisions of the statute above referred to clearly were not intended to cover a situation like that presented in the instant case. The owner of the life estate, as such, while under an obligation to pay the interest on the note and mortgage, was under no obligation to pay the principal; neither were the owners in fee under an obligation to pay the principal. Nevertheless, the remaindermen at any time could have paid the principal of the mortgage and could have enforced contribution against the life tenant for the amount of the interest which he was obligated to pay, such interest being computed in accordance with the annuity table, and the amount so paid for the benefit of the life tenant could be declared a lien on the interests of the life tenant and enforced in an action in equity. On the other hand, the life tenant was at liberty, if he saw fit, to pay the principal of the mortgage and enforce contribution against the remaindermen for the whole amount, less the amount which the life tenant was obligated to pay as interest, also computed in accordance with the annuity table, and the amount so paid for the benefit of the remaindermen could be enforced against their interests by the life tenant in an equitable

action.   But while either of the parties was at liberty to pursue the course above indicated, neither was under any obligation to do so, and so long as the principal of the mortgage rested upon the premises the life tenant remained obligated to pay the interest.

From the foregoing it clearly appears that neither the life tenant nor the remaindermen were at any time remediless in the premises.   But while the remaindermen at all times could have resorted to the remedy aforesaid, it was their privilege to permit the situation to remain *in statu quo,* assuming the risk of a foreclosure and taking the chance of the full statutory period to operate so as to deprive the plaintiff of her cause of action as against them.   The latter course is the one evidently chosen by the remaindermen, and, the full statutory period having elapsed, from the time of the death of the owner of the mortgaged premises, and the mortgage not having been renewed as to them, the plaintiff's rights became effectually barred.   On the other hand, it at all times was the privilege of the life tenant to pay the interest upon the mortgage, and in so doing toll the limitation statutes as to him.   This course the life tenant has pursued, and by the payment of part of the interest in 1918 he effectually tolled the statute both as to his obligation on the note and on the mortgage.   So that up to the time of his death plaintiff retained her right to collect upon the personal obligation of her husband, created by his having been a joint maker of the note, and his life interest in the property became subject to foreclosure and sale.   However, the interest of the life tenant ceased upon his death, leaving the only remedy available to the plaintiff, as to him, that of filing a claim against his estate.

Appellants' counsel cite the case of *Ætna L. Ins. Co. v. McNeely,* 166 Ill. 540, 46 N. E. 1130.   In that case one Fanning executed to the insurance company a note for $1,000, and to secure the same executed a mortgage upon his property, in which his wife joined.   In Illinois, at that

time, the statute of limitations for the foreclosure of a mortgage was limited to ten years. The mortgagor died in 1881, and the widow, by virtue of her homestead and dower rights, retained possession of the lands until the time of her death in 1892. Fanning paid the interest on the note and mortgage up to the time of his death, and the widow paid the interest until 1887. Plaintiff commenced foreclosure on the mortgage in 1895. The children and heirs at law of Fanning pleaded the statutes of limitation. It must be observed that during a period in excess of ten years prior to the commencement of the foreclosure the only interest paid upon the note and mortgage was paid by the widow. In its decision the Illinois court says:

"We think it is also clear that a payment of either principal or interest by the widow would operate to arrest the running of the statute of limitations as to any proceeding which might be instituted under the mortgage as against her interest in the premises, but we perceive no 'ground upon which it can be held that a payment by her without any authority whatever from the heirs who owned the fee could stop the running of the statute of limitations as against a proceeding which might be instituted against them for the purpose of reaching their interest in the premises. *She held one interest in the property and they held another.* The mortgage held by the insurance company covered both of these interests. The interests of the respective parties were separate and distinct. The widow was under no obligation to pay the mortgage debt, and no obligation rested upon the heirs to do so. Neither party was legally bound to pay, and neither could be expected to do so except for the purpose of relieving his interest in the premises from the mortgage. As no joint rights or interests were held by the widow and heirs in the property, we see no ground upon which it can properly be held that their rights should be controlled by her unauthorized acts."

The only difference between the *McNeely Case* and the instant one lies in the fact that in the instant case John McLean signed the note and mortgage, while in the *McNeely*

*Case* the widow did not sign the note but signed the mortgage. This distinction was pointed out in the brief of the learned counsel for the respondent, but we fail to see why such distinction should lead to a different result in the instant case than that arrived at in the Illinois case. While in the instant case John McLean became a joint contractor with his wife by executing the note jointly with her, had Mary E. McLean, the wife, continued to live until the time of the death of her husband she could have effectually pleaded the statutes of limitation and barred plaintiff's remedy if the only interest payment during the twenty-year period had been made by the husband without authority of his wife and without her acquiescence and consent. In other words, under the provisions of sec. 4248 she would not have lost the benefit of the provisions of the act so as to be chargeable, by reason only of any payment made by the other joint contractor.

We therefore conclude that the plaintiff herein is effectually barred of her remedy as against the appellants by virtue of the statutes of limitation.

*By the Court.*—Judgment of the lower court is reversed, and the cause is remanded with directions to dismiss the complaint as to the appellants.

A motion for a rehearing was denied, without costs, on October 14, 1924.